337 A.2d 893

**Catherine K. BERKEBILE, Executrix Under the Will of Cloyd C. Berkebile**

v.

**BRANTLY HELICOPTER CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Decided May 19, 1975.

86

88

Sidney L. Wickenhaver, Montgomery, McCracken, Walker & Rhoads, Philadelphia, for appellant.

Laurence H. Eldredge, San Francisco, Cal., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

This case is before us on a grant of allocatur.[1] The Superior Court reversed a verdict for the defendant-appellant in the trial court. We affirm.

1. This case was tried for the first time and appealed after a verdict for the defendant. The Superior Court ordered a new trial on the basis that the trial judge had charged that because the Federal Aviation Agency's regulations established a requirement that all helicopters be able to go into autorotation in one second or more, failure to push the "collective pitch stick" down in one second was "abnormal use." The Superior Court held that "[c]ompliance with a law or administrative regulation relieves the actor of negligence per se, but it does not establish as a

Cloyd Berkebile was killed on July 9, 1962 when the helicopter he was piloting crashed while in climbing flight. The executrix wife brought this wrongful death and survival action against Brantly Helicopter Corporation, the manufacturer of the helicopter. The plaintiff relied upon the theory of strict liability. Restatement (Second) of Torts, § 402A.[2] Several significant issues of importance in the growing area of strict liability recovery are presented in this multifaceted appeal. To avoid further confusion we find it necessary to clarify the concepts of strict liability under Pennsylvania law.

Brantly manufactured the small, two-person, B–2 model helicopter in October of 1961. Addressing itself to the general aviation market, the advertising described the helicopter as "safe, dependable," not "tricky to operate," and one that "beginners and professional pilots alike agree . . . is easy to fly." Brantly had experienced some difficulties in designing its rotor blades and autorotation in the development stage and modified the system to some degree prior to its distribution. In January, 1962, Mr. Berkebile, a businessman, purchased the

matter of law that due care was exercised." *Berkebile v. Brantly Helicopter Corp.*, 219 Pa.Super. 479, 484, 281 A.2d 707, 710 (1971). They also concluded that the issue of whether defendant had taken adequate precautions in the design of the autorotational system of its helicopter should have gone to the jury. Verdict for defendant was had at the second trial. Plaintiff's post-trial motions were denied and plaintiff-appellee appealed.

2. § 402A Special Liability of Seller of Products for Physical Harm to User or Consumer.
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused thereby to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product; and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

helicopter from defendant's distributor. Mr. Berkebile flew alone on July 9, and while in climbing flight the seven-foot outboard section of one of the three main rotor blades separated. The helicopter crashed on a wooded hillside, killing Mr. Berkebile.

Plaintiff proposed four grounds for recovery at the second trial: (1) The design of the rotor system of the helicopter was defective because the average pilot had insufficient time to place the helicopter in autorotation in an emergency power failure in climbing flight; (2) The rotor blade was defectively manufactured and designed; (3) The defendant rendered the helicopter defective as a result of the inadequate warnings regarding the possible risks and inherent limitations of one of the systems of the helicopter; and (4) The defendant misrepresented the safety of the helicopter in its advertising brochures.

The defendant, denying the existence of any defective condition in its product, theorized that the helicopter's rotor blade had fractured due to an abnormal use brought about by power failure resulting from fuel exhaustion, followed by a failure on decedent's part to push down the collective pitch in time to go into autorotation and to effect a proper emergency landing.

Plaintiff contends on appeal that the trial court erred in charging the jury on the law to be applied to these facts and erred in several of its evidentiary rulings. A review of the record and of the court's charge in particular, when taken as a whole, demonstrates a basic confusion concerning the principles of strict liability in torts. Despite the diligent efforts of the trial judge to conform his charge to the law, this case has been tried twice and, regretfully, must be tried for the third time. Although we have recognized strict liability recovery since our decision in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), it is apparent that the lack of clearly articulated standards has generated much misinterpretation.

■■■ The law of products liability developed in response to changing societal concerns over the relationship between the consumer and the seller of a product. The increasing complexity of the manufacturing and distributional process placed upon the injured plaintiff a nearly impossible burden of proving negligence where, for policy reasons, it was felt that a seller should be responsible for injuries caused by defects in his products. *See* Restatement (Second) of Torts § 402A, comment, *c*. We therefore held in *Webb v. Zern, supra,* that the seller[3] of a product would be responsible for injury caused by his defective product even if he had exercised all possible care in its design, manufacture and distribution. We emphasized the principle of liability without fault most recently by stating that the seller is "effectively the guaranter of his product's safety," in *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974).

"Our courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect."

■■■ Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the de-

---

**3.** The term "seller" is used generically to include all suppliers of products who, because they are engaged in the business of selling or supplying a product, may be said to have "undertaken and assumed a special responsibility" toward the consuming public and who are in a position to spread the risk of defective products. Restatement (Second) of Torts § 402A, comment c. The actual form of the transactions of such suppliers, whether by sale, lease or bailment, should not alter their obligations. Occasional suppliers who are not in the business of selling or supplying such products are not "sellers" subject to strict liability.

fect was a proximate cause of the plaintiff's injuries.[4] Thus, the plaintiff cannot recover if he proves injury from a product absent proof of defect, such as developing diabetic shock from eating sugar or becoming intoxicated from drinking whiskey. Neither can plaintiff recover by proving a defect in the product absent proof of causation, as where plaintiff sustains eye injury while not wearing defective safety glasses. Also, plaintiff must prove that the defect causing the injury existed at the time the product left the seller's hands; the seller is not liable if a safe product is made unsafe by subsequent changes. *See Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 242 A.2d 231 (1968). *See also*, Restatement (Second) of Torts, § 402A(1)(b). The trial court correctly identified these as pertinent issues in a strict liability case.

The crucial difference between strick liability and negligence is that the existence of due care, whether on the part of seller or consumer, is irrelevant. The seller is responsible for injury caused by his defective product even if he "has exercised all possible care in the preparation and sale of his product." Restatement (Second) of Torts, § 402A(2)(a). As we declared in *Salvador, supra*, 457 Pa. at 32, 319 A.2d at 907, the seller "may not preclude an injured plaintiff's recovery by forcing him to prove negligence in the manufacturing process." What the seller is not permitted to do directly, we will not allow him to do indirectly by injecting negligence concepts into strict liability theory. In attempting to articulate the definition of "defective condition" and to define the issue of proximate cause, the trial court

4. This concept is not entirely a new one. For example, in state and federal food and drug law we have long recognized the imposition of even *criminal* responsibility on the part of one who handles adulterated or mislabelled products despite all due care and good intention on his part. This imposition of criminal liability in food and drug law without fault is analogous to the civil liability without fault imposed upon the seller of defective products under § 402A.

here unnecessarily and improperly injected negligence principles into this strict liability case.

Section 402A recognizes liability *without fault* and properly limits such liability to defective products. The seller of a product is not responsible for harm caused by such inherently dangerous products as whiskey or knives that despite perfection in manufacture, design or distribution, can cause injury. *See* Restatement (Second) of Torts, § 402A, comment *i*. At first glance, however, it would appear that the section does impose a contradictory burden of proof in that the defect also be "unreasonably dangerous." An examination of comment *i* indicates that the purpose of the drafters of the clause was to differentiate those products which are by their very nature unsafe but not defective from those which can truly be called defective.[5] The late Dean Prosser, the reporter of the Restatement (Second) of Torts, has suggested that the only purpose for the clause was to foreclose any argument that the seller of a product with inherent possibilities for harm would become "automatically responsible for all the harm that such things do in the world." Prosser, Strict Liability to the Consumer in California, 18 Hast.L.J. 9, 23 (1926). Commentators and courts, attempting to define "defective condition" have suggested tests based upon the negligence-oriented "reasonable man" that have further diluted the strict liability concept.[6] The purpose of the "unreasonably dan-

5. The history of the drafting of the comments to § 402A reveals that the drafters particularly had in mind here products which are ingested. An examination of the comment shows that it reads that "[m]any products cannot be made entirely safe for all *consumption*, and *any food or drug* necessarily involves some risk of harm, if only from over-consumption."

6. The Restatement commentary suggests an objective test looking to the reasonable expectations of the "ordinary consumer . . ., with the ordinary knowledge common to the community as to [the product's] characteristics." Restatement (Second) of Torts, § 402A, comment *i*. Others suggest an objective test looking instead to the reasonable seller, submitting as the issue whether he, if he had known of the condition of the product,

gerous" clause would appear to be best served by its inclusion in the issue of proximate cause. Those courts in the van-guard of products liability law, in doing away with this distinction, have adopted this analysis. The California Supreme Court, after reviewing the purpose of the "unreasonably dangerous" clause, said:

"The result of the limitation . . . has not been merely to prevent the seller from becoming an insurer of his products with respect to all harm generated by their use. Rather, it has burdened the injured plaintiff with proof of an element which rings of negligence. As a result, if, in view of the trier of fact, the 'ordinary consumer' would have expected the defective condition of a product, the seller is not strictly liable, regardless of the expectations of the injured plaintiff. . . ."

"We recognize that the words 'unreasonably dangerous' may . . . serve the beneficial purpose of preventing the seller from being treated as the insurer of its products. However, we think that such protective end is attained by the necessity of proving that there was a defect in the manufacture or design of the product, and that such defect was a proximate cause of the injuries."

*Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 132–33, 104 Cal.Rptr. 433, 441, 501 P.2d 1153, 1161 (1972); *in accord, Glass v. Ford Motor Co.*, 123 N.J.Super. 599, 304 A.2d 562 (1973).

We hold today that the "reasonable man" standard in any form has no place in a strict liability case. The salutary purpose of the "unreasonably dangerous" qualification is to preclude the seller's liability where it cannot be said that the product is defective; this purpose can be met by requiring proof of a defect.

"would . . . then have been acting reasonably on placing it on the market." Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5, 15 (1965).

To charge the jury or permit argument concerning the reasonableness of a consumer's or seller's actions and knowledge, even if merely to define "defective condition" undermines the policy considerations that have led us to hold in *Salvador* that the manufacturer is effectively the guaranter of his product's safety. The plaintiff must still prove that there was a defect in the product and that the defect caused his injury; but if he sustains this burden, he will have proved that as to him the product was unreasonably dangerous. It is therefore unnecessary and improper to charge the jury on "reasonableness." *Cronin, supra; Glass, supra.*

The trial court further confused the standards of strict liability in its charge on proximate cause. The court charged that, in order for it to be said that a defect caused plaintiff's injury, "such a consequence, under all the surrounding circumstances of the case, *must have been foreseeable by the seller.*" To require foreseeability is to require the manufacturer to use due care in preparing his product. In strict liability, the manufacturer is liable even if he has exercised all due care. Restatement (Second) of Torts, § 402(A)(2)(a). Foreseeability is not a test of proximate cause; it is a test of negligence. *Hoover v. Sackett,* 221 Pa.Super. 447, 451, 292 A.2d 461, 463 (1972). Because the seller is liable in strict liability regardless of any negligence, whether he could have foreseen a particular injury is irrelevant in a strict liability case. In either negligence or strict liability, once the negligence or defective product is shown, the actor is responsible for all the unforeseen consequences thereof no matter how remote, which follow in a natural sequence of events. *Hoover, supra.*

The trial court further erred in charging the jury separately on the issue of "abnormal use." On this issue the court charged in part:

"The defendant is not liable if the product is used in an abnormal manner, or in a way in which it was not

designed to be used. . . . If you take a helicopter and use it abnormally . . ., and such improper use was the proximate cause of the accident, that does not make the helicopter defective. . . . It must be used normally and properly in order for it to be defective and dangerous. . . . If you push the collective lever down and go into autorotation within the necessary time, then you are using it normally, but if you do not do it then you are not using it normally."

On plaintiff's theory that the helicopter was designed defectively in that there was not enough time for the average pilot to effect autorotation safely, the question of "necessary time" to go into autorotation was the plaintiff's entire case. Under this theory, plaintiff agreed that the decedent did not achieve autorotation but argued that this was because of the defect in that system's design. When the trial judge drew the factual and legal conclusions for the jury that if plaintiff's decedent did not place the helicopter in autorotation there could be no recovery, it was tantamount to his directing a verdict against plaintiff on this theory. Such charge was error.

■ The evidence such as was introduced by the defense in this case under the guise of "abnormal use" was admissible but for a different purpose. Plaintiff must prove a defect existing in the product at the time the product left the seller's hands and he must prove proximate cause. If the seller can prove the defect arose from use after sale he would not be liable. Plaintiff contended that the blade fractured because of a defect in manufacture; defendant's contention that the blade fractured from impact with the "stops" rebutted the contention of this defect. Plaintiff contended the autorotation system was defective because it gave a pilot insufficient time to activate it. The autorotation system is a safety device existing for the sole purpose of preventing a crash in the event of engine failure *for any reason*. The reason the engine failed is irrelevant. Even defendant's argument

that decedent was flying without gas,[7] would be no "abnormal use." The autorotation system only comes into use in the event of engine failure for whatever reason it may be. Nor can it be said that the failure of decedent to go into autorotation "within the necessary time" rebuts the contention that the autorotation system was defective in not allowing sufficient time for its activation. What constitutes "necessary time" is the key to the issue of the defect. For example, if defendant showed that an average pilot required one second to achieve autorotation and also showed that this helicopter gave decedent one second to achieve autorotation in climbing flight, he would rebut the contention of this defect. Whether decedent actually attempted autorotation is relevant to the issue of causation. If the jury were to conclude, for example, that a non-defective system would allow two seconds for autorotation and that the decedent did not attempt autorotation for three seconds; even if a defect was shown, it could not have been the proximate cause of the crash.[8] In conclusion, evidence which would be admissible in a negligence case to prove "abnormal use" is admissible in a strict liability case only for the purpose of rebutting the plaintiff's contentions of defect and proximate cause. It is not properly submitted to the jury as a separate defense.

▮▮▮▮▮ The trial court's charge on "abnormal use" permitted the jury to conclude that an alleged failure on decedent's part to determine the amount of gas available

---

7. Plaintiff also contended that the rotor blade was defective, since, if it fractured as defendant contended when it struck the "stops," it should have been designed or manufactured in such a manner as to withstand this impact. Because this also assumes engine failure, the circumstances leading to such engine failure are irrelevant.

8. Plaintiff additionally contended that, if the decedent failed to activate the autorotational system in time to avoid loss of control, such failure was caused by a defect in the warnings and instructions accompanying the aircraft. If the jury found such to be the case, the decedent's failure to activate the safety system would not insulate the defendant from liability.

for flight precluded plaintiff's recovery on any theory. A plaintiff cannot be precluded from recovery in a strict liability case because of his own negligence. He is precluded from recovery only if he knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect. *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 327, 223 A.2d 746, 748 (1966); Restatement (Second) of Torts, § 402A, comment *n*. Furthermore, a finding of assumption of risk must be based on the individual's own subjective knowledge, not upon the objective knowledge of a "reasonable man." *See Dorsey v. Yoder*, 331 F.Supp. 753, 765 (E.D.Pa., 1971); Restatement (Second) of Torts, § 496D, comment *c*. Such a defense can be charged upon by the court only if there is evidence introduced by defendant that the decedent knew of the specific defect causing his death and appreciated the danger it involved before using the aircraft. *See* Restatement (Second) of Torts, §§ 496C and 496D.

A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment *h*. If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.

"Comment *h* to the section [402–A] makes it clear that a product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a 'defective condition.' " *Incollingo v. Ewing, et al.*, 444 Pa. 263, 287, 282 A.2d 206, 219 (1971).

In the instant case, the warnings of the dangers and instructions for flying the B–2 are contained in the Rotorcraft Flight Manual and in the cockpit placard. There is no specific warning as to the time needed to get into autorotation, and there is no direction or warning with respect to "Engine Failure in Climbing Flight." There are, however, directions to the pilot to lower the collective pitch lever in case of engine failure; that autorotation should be implemented at no less than 300 rotor RPM; and, that failure to comply "may result in damage to the outer blades."

The question for the jury concerning warnings was whether the warnings appearing in the flight manual and the cockpit placard were sufficient to make Mr. Berkebile aware of the dangers of power failure and delayed autorotation, and whether said warnings adequately conveyed the urgency of the situation and the need to react almost instantaneously. If the jury determines that the helicopter was in a defective condition by the failure to provide sufficient warnings and directions for use, the seller is liable for all harm caused thereby.

It must be emphasized that the test of the necessity of warnings or instructions is not to be governed by the reasonable man standard. In the strict liability context we reject standards based upon what the "reasonable" consumer could be expected to know, or what the "reasonable" manufacturer could be expected to "foresee" about the consumers who use his product. Compare *Maize v. Atlantic Refining Co.*, 352 Pa. 51, 41 A.2d 850 (1945); *Thomas v. Avron Products Co.*, 424 Pa. 365, 227 A.2d 897 (1967) (negligence actions where we recognize the affirmative duty of a seller to give warnings but base it on the reasonable man standard). Rather, the sole question here is whether the seller accompanied his product with sufficient instructions and warnings so as to make his product safe. This is for

the jury to determine. The necessity and adequacy of warnings in determining the existence of a defect can and should be considered with a view to all the evidence. The jury should view the relative degrees of danger associated with use of the product since a greater degree of danger requires a greater degree of protection. *E. g., Thomas v. Avron Products, Inc., supra.* In this case, plaintiff argued that the most serious emergency in the event of power failure was in climbing flight, since there would be the greatest rotor decay and thus least amount of time available for activating the autorotation system. In cruise flight, rotor decay upon engine failure is the least serious emergency and thus gives the greatest amount of time in which to achieve autorotation. In hovering flight, rotor decay is in an intermediate amount. Defendant's flight manual for the helicopter's operation gives the maximum detailed warnings in regard to the minimum emergency (cruise) and the minimum warnings (none) in the maximum emergency situation (climb). One study done by defendant and specifically excluded by the trial court showed a concern on the part of defendant's chief test pilot regarding rapid rotor decay in climbing flight.[9] If the jury determined this was an insufficient warning, the product would be defective even if the product had been perfectly designed and manufactured. The jury would have to go on to conclude

---

9. Since a new trial is required, we note several of the trial court's rulings on evidence.

The trial judge excluded a memorandum of defendant's chief test pilot to the defendant's president dated January 24, 1960, as hearsay. The memorandum was written by Captain Erickson while he was an agent of defendant in the course of his duties and within the scope of his authority, and thus is admissible as substantive evidence against the defendant. Also, any letters from defendant to the FAA, if relevant at the new trial, are admissible as admissions if the proper foundation for their admission is laid. Any certified copies of FAA records and documents such as airworthiness directives, if relevant, are not inadmissible on the basis of hearsay if a foundation is also laid. *See* P.L.E., Evidence, § 191; *Paxos v. Jarka,* 314 Pa. 148, 171 A. 468 (1934).

that the defective condition was the proximate cause of decedent's death before there would be recovery. As an example, the failure of a seller of ordinary knives to warn of dangerous propensities can not be considered the proximate cause of a consumer's cutting his finger since the potentiality of its danger is generally known and recognized. It is sometimes necessary to consider whether *any* warnings are required. Here the only issue was the adequacy of warnings since FAA regulations and the defendant's own inclusion of some warnings in regard to the autorotation system demonstrated the necessity of warnings. The issue of necessity and adequacy of warnings and instructions for use must also be considered in light of any contradictory promotional activities on the part of the seller. *Incollingo, supra.*

 Where warnings or instructions are required to make a product nondefective, it is the duty of the manufacturer to provide such warnings in a form that will reach the ultimate consumer and inform of the risks and inherent limits of the product. The duty to provide a non-defective product is non-delegable. *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121, 130 (9th Cir. 1968); *see, e. g., Foley v. Pittsburgh-Des Moines Co.,* 363 Pa. 1, 26–27, 68 A.2d 517 (1949).

██ The trial judge refused to charge the jury separately on the issue of misrepresentation under Restatement (Second) of Torts, § 402B, stating that the advertising claims were part of the warning issue under Section 402A rather than a separate issue under Section 402B. Plaintiff contended that brochures stating that "you are assured of a safe, dependable helicopter" and that the helicopter was "easy to operate" were a misrepresentation of material facts concerning the character or quality of a chattel. Misrepresentation must be distinguished from mere "puffing." We find these statements do not constitute misrepresentations of material

fact. *See Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118 (1934).

The order of the Superior Court is affirmed.

ROBERTS, J., filed a concurring opinion.

POMEROY, J., filed a concurring opinion.

EAGEN, O'BRIEN and MANDERINO, JJ., concur in the result.

ROBERTS, Justice (concurring).

The trial court instructed the jury that if the pilot of the helicopter failed to place the helicopter in autorotation in time to prevent a crash, he used the helicopter in an abnormal manner and his estate would be barred from recovery. Because this instruction improperly withdrew from the jury's consideration one of appellant's theories of recovery—that the helicopter was defectively designed so as to make it impossible for the pilot to place the helicopter in autorotation—I concur in the majority's decision affirming the Superior Court's grant of a new trial.

POMEROY, Justice (concurring).

It is by now settled that a product which is perfectly made may nonetheless be "unreasonably dangerous" if adequate warnings of the dangers involved in the use of the product are required and are not given by the seller. Restatement (Second) of Torts, § 402A, comment *h*; *Incollingo v. Ewing*, 444 Pa. 263, 287, 282 A.2d 206, 209 (1971). See also *Patch v. Stanley Works (Stanley Chemical Co. Div.)*, 448 F.2d 483 (2nd Cir. 1971); Prosser on Torts, 659 (4th Ed., 1971; 63 Am.Jur.2d, Products Liability, § 42 at 53. I concur in the decision of the Court affirming the grant of a new trial because I am satisfied that the trial judge in his charge did not suffi-

ciently inform the jury of the need for adequate warnings, as to how the jury should determine adequacy and the consequences of inadequacy.

While the portion of the charge dealing with this subject was in general correct as far as it went, it failed to apprise the jury that where a product contains inherent dangers to human life there is a mandatory duty on the seller of the product to give warnings to the user or consumer which are adequate to inform him of such dangers, and that when such a product is sold without adequate warnings, the product is sold in a "defective condition" within the meaning of the law on strict liability.[1] As the opinion of Mr. Chief Justice Jones suggests, the issue should have been put squarely to the jury whether the various warnings and directions which were in fact given by the defendant to plaintiff's decedent, but which did not include any reference to the extremely brief time available to place the helicopter in autorotation while in climbing flight, were adequate under the circumstances.[2] Stated another way, a principal issue for jury determination was whether under all the evidence the warnings "adequately conveyed [to the user] the urgency of the situation and the need to react almost instantaneously." (Opinion announcing the decision of the court, ante at 902.)

The deficiency of the charge in this regard was, in my view, sufficiently serious to require a new trial.

1. A charge substantially to this effect was requested by appellee but refused by the trial court.

2. Defendant introduced expert testimony to the effect that a precise statement of time within which to achieve autorotation could not be given because the time required depended on a number of variables, such as weight of the aircraft (which is in turn related to the amount of fuel on board), the power setting and the pitch of the blades when the power failed, the angle of ascent and the reaction time of an "average" pilot.