Rose ZURZOLO

v.

GENERAL MOTORS CORPORATION.

Civ. A. Nos. 70–308, 70–310.

United States District Court,
E. D. Pennsylvania.

Nov. 19, 1975.

C. William Kraft, III, Philadelphia, Pa., for plaintiff.

George J. Lavin, Jr., Philadelphia, Pa., for defendant General Motors Corp.

Henry J. Lotto, Philadelphia, Pa., for defendant Mutchnick.

## MEMORANDUM OPINION AND ORDER

HIGGINBOTHAM, District Judge.

### INTRODUCTION

Plaintiff brought this diversity action to recover for personal injuries suffered in a motor vehicle collision at the intersection of Roosevelt Boulevard and Harbison Avenue in the city of Philadelphia on May 26, 1969. In her action against defendant General Motors, based on a theory of strict liability under § 402A, Restatement Second, Torts, she alleged that the left rear window glass of a vehicle manufactured by said defendant and in which she was riding at the time of the collision was defective in design and/or manufacture. In her action against defendant Jack Mutchnick, she alleged that said defendant had driven his car, the other vehicle involved in the collision, at an excessive speed and had failed to make adequate observations under the circumstances. After a lengthy trial, the jury returned a verdict in favor of both defendants. Plaintiff now moves for a new trial and alleges that at trial the court erred in four different respects:

1. by admitting evidence related to negligence and by charging the jury concerning negligence in an action based on strict liability;

2. by permitting defendant General Motors to enter a defense when it had failed to answer interrogatories filed by plaintiff more than two years before trial;

3. by permitting defendant General Motors to show a motion picture film to the jury; and

4. by denying plaintiff's motion for withdrawal of the jury after a conversation during the course of the trial between sworn jurors and an attorney who did not represent any party in this action.

For reasons that will hereinafter appear, I have concluded that plaintiff's

assignments of error at trial are without merit. Accordingly, her motion for a new trial will be denied.

## LEGAL DISCUSSION

A. Strict Liability Under Pennsylvania Law.

In support of her contention that the trial court erred in this strict liability action by admitting evidence related to negligence and by instructing the jury concerning concepts of negligence, plaintiff relies on *Berkebile v. Brantly Helicopter Corporation*, Pa., 337 A.2d 893 (1975).

 To be sure, the opinion of Chief Justice Jones in *Berkebile* does state that "the 'reasonable man' standard in any form has no place in a strict liability case." 337 A.2d at 900. For several reasons, however, I am not persuaded that *Berkebile* carries the day for the plaintiff. In the first place, plaintiff did not request an instruction to the jury along the lines of Justice Jones's opinion in *Berkebile*. *Berkebile* was decided on May 19, 1975, and I charged the jury in the instant action on April 1, 1975. Thus, even if *arguendo* the *Berkebile* case recasts the Pennsylvania substantive law on § 402A, I did not anticipate that such a new mold would be created, and plaintiff's counsel was similarly lacking in omniscience. The instruction on strict liability that the plaintiff requested (Plaintiff's Request for Jury Instructions, # 4) was based on *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), and I did in fact give that instruction. N.T., April 1, 1975, at 89–90. Moreover, there is a serious question as to whether *Berkebile* is entitled to precedential value, since only one justice of the Supreme Court of Pennsylvania joined in Chief Justice Jones's opinion. Three other justices concurred

only in the result, and two additional justices filed separate concurring opinions based on rationales different from that expressed in Chief Justice Jones's opinion. In similar circumstances, both this court and the Supreme Court of Pennsylvania have declined to treat a decision as a binding precedent. *Burak v. Commonwealth of Pennsylvania*, 339 F.Supp. 534, 537 (E.D.Pa.1972); *Commonwealth v. Little*, 432 Pa. 256, 260, 248 A.2d 32 (1968). Indeed, *Berkebile* itself has recently been held not to state the law of Pennsylvania. See Judge Huyett's thoughtful opinion in *Beron v. Kramer-Trenton Company*, 402 F.Supp. 1268 (E.D.Pa., filed October 24, 1975). In sum, where plaintiff failed to request the instruction whose omission is now alleged to be error, where the instruction requested by plaintiff was in fact given by the Court, where the case stating the doctrine upon which plaintiff relies was decided over six weeks after the jury was instructed, and where that case itself is of doubtful precedential value, I do not see how plaintiff has, on this question, established her right to a new trial.

 Again relying on *Berkebile*, plaintiff further contends that the Court erred by instructing the jury that a defective condition was one that was unreasonably dangerous and that a manufacturer was obligated to produce a "reasonably safe version" of glass used in cars of the type involved in the collision, and by admitting evidence that went to the question of reasonableness.[1] For reasons I have stated previously, I do not believe that *Berkebile* should control the instant case. Moreover, my instructions and my evidentiary rulings were amply supported by the relevant case law. Indeed, in *Dyson v. General Motors Corporation*, 298 F.Supp. 1064, 1073 (E.D.Pa.1969), Judge Fullam de-

---

1. On this issue, it should be noted that plaintiff did object to defendant General Motors' request for charge that a defective product must be "unreasonably dangerous," and also objected to the cross-examination of plaintiff's expert on his knowledge of safety codes and standards.

scribed the manufacturer's obligation in the precise "reasonably safe version" language that I used in my instructions. See also *Dreisonstok v. Volkswagenwerk, A. G.,* 489 F.2d 1066, 1073–74 (4th Cir. 1974). If an instruction about reasonableness was proper, then so was the admission of evidence related to reasonableness. Once more, I do not see how these rulings entitle plaintiff to a new trial.

■ Plaintiff further contends that the Court erroneously permitted the introduction of evidence that she was not wearing a seat belt at the time of the collision. Her argument, however, is without merit. The Court specifically noted that such evidence was not relevant to plaintiff's theory of strict liability against defendant General Motors (N.T., April 1, 1975, at 35), and specifically instructed the jury that such evidence was relevant *only* to defendant Mutchnick's theory that plaintiff was contributorily negligent. N.T., April 1, 1975, at 95. The parties have not called to my attention any authoritative statement of Pennsylvania law which holds that the failure to wear a seat belt may render a party contributorily negligent. Cf. *Mays v. Dealers Transit, Inc.,* 441 F.2d 1344, 1353–55 (7th Cir. 1971). Nevertheless, since the jury specifically found in answer to Interrogatory # 9 that the plaintiff was not contributorily negligent, Doc. # 39, filed April 1, 1975, certainly the admission of evidence related to the seat belt issue and any instruction on that issue (even if erroneous) does not justify the granting of a new trial.

**B. Denial of Plaintiff's Motion for Preclusion.**

At trial, plaintiff moved, pursuant to Fed.R.Civ.P. 37(d), to preclude defendant General Motors from entering a defense, alleging that said defendant had never answered interrogatories filed and served by plaintiff on September 25, 1972. Defendant conceded that it had not answered these interrogatories, but stated that a thorough search of its records an its counsel's records had not uncovered either a copy of the interrogatories or a transmittal letter for them. After oral argument and a review of the record in the case, the Court denied plaintiff's motion.

The record reveals that on September 13, 1973, counsel for plaintiff attended a pretrial conference before the Honorable Thomas A. Masterson, then of this Court, and did not mention the unanswered interrogatories. Judge Masterson's subsequent pretrial order indicated that discovery was complete. On September 19, 1974, plaintiff's counsel appeared at a Status Call of this court, but did not refer to the unanswered interrogatories. Neither did plaintiff's Proposed Final Pretrial Order, filed on October 3, 1974. On January 29, 1975, United States Magistrate Richard A. Powers, III, conducted a pretrial conference in this action and his subsequent pretrial report, like Judge Masterson's, stated that discovery was complete. The case was listed for trial on March 14, 1975; the trial itself began on March 18, 1975. At the close of plaintiff's case on March 24, 1975, her counsel filed the aforementioned motion for sanctions.

■ This record shows plainly that for a period of more than 18 months, in numerous appearances and pleadings before this Court, plaintiff never once raised the issue of the unanswered interrogatories and never once suggested that discovery was not complete. In light of this record, I believed at trial that the granting of plaintiff's motion would pervert the purposes of the Federal Rules of Civil Procedure, which are to be "construed to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. While Fed.R. Civ.P. 37(d) provides for the imposition

of sanctions on a party for failure to answer interrogatories, it also says that "the court in which the action is pending on motion may make such orders in regard to the failure as are just." Plaintiff's lengthy silence about the unanswered interrogatories rendered my denial of her motion the only just order that I could make. That was my judgment at trial; I see no reason to disturb it now. Plaintiff is not entitled to a new trial for my denial of her Rule 37(d) motion.

## C. Exhibition of a Motion Picture to the Jury.

■ Plaintiff's third assignment of error at trial is that the Court improperly permitted a motion picture to be shown to the jury in conjunction with the testimony of defendant General Motors' expert witness, William Cichowski. Plaintiff contends that the film did not accurately represent the accident in the instant case, was not listed as an exhibit by the defendant prior to trial, and was highly prejudicial to plaintiff because it failed to show all of the physical factors operative in the instant collision.[2]

The film in question was offered to demonstrate certain principles of physics. It functioned as a graphic portrayal of the expert's oral testimony about Newton's laws of motion. It was never intended or understood to be an exact representation of the accident involved in this case. I reviewed the film before it was shown to the jury and was satisfied that it did in fact accurately portray the Newtonian laws of motion. N. T. 381. As such, it would have been admissible into evidence. *Millers' National Insurance Company v. Wichita Flour Mills Company*, 257 F.2d 93, 98–99 (10 Cir. 1958); cf. 3 Wigmore, *Evidence* § 798a(a) (Chadbourn rev. 1970). Furthermore, I saw no prejudice to the plaintiff in permitting the jury to see it. In any event, plaintiff's counsel was afforded ample opportunity to cross-examine defendant's expert and to explore the differences between what the film depicted and the accident at issue in the instant case. See, *e. g.,* N.T. 495.

■ Plaintiff's contention that the film should have been listed as an exhibit prior to trial is unpersuasive. If the film had been offered as an exhibit, even though not listed in a pretrial order, its admission would nevertheless have been within the Court's discretion. *Millers' National Insurance Company, supra* at 98; *Globe Cereal Mills v. Scrivener*, 240 F.2d 330, 335 (10th Cir. 1956). In the instant case, the film was not even offered as an exhibit. I can see no error in permitting it to be shown to the jury merely to illustrate the oral testimony of defendant's expert. Plaintiff's third assignment of error is thus also without merit.

## D. Attorney-Juror Communications.

■ Toward the end of the trial on this action, during a recess between the closing speeches of counsel to the jury, defense counsel observed an attorney who did not represent any party to this action engaged in conversation with several jurors in a courthouse corridor. Defense counsel informed counsel for plaintiff of the conversation, which had lasted for approximately ten minutes. Plaintiff's counsel then moved the Court for withdrawal of the jury. I took the motion under advisement and proceeded to question individually the attorney involved and each member of the jury about the conversation. N.T., March 31, 1975, at 30–52. The latter apparently included a discussion of counsel fees, the appellate process and jury deliberations. This case was not discussed; indeed, it was not even mentioned. After this questioning, the closing speeches of counsel were concluded, the jury was subsequently instructed on the applicable

---

2. The first and third of these arguments are, in my judgment, virtually indistinguishable.

law, and eventually returned a verdict for both defendants on the issue of liability.

I did not grant withdrawal of the jury when plaintiff requested it because I was satisfied, after my interrogation of the attorney and the jurors, that their conversation was largely innocuous. Moreover, to withdraw the jury on the next to last day of a lengthy trial would have nullified the substantial investment of judicial resources that had already occurred. I was, of course, concerned about the discussion of counsel fees; it clearly had the potential to influence the jury's assessment of damages. Thus, if the jury had found for the plaintiff on liability and had assessed damages in an amount that was extraordinarily high or extraordinarily low, it would certainly have been permissible to infer that the discussion of counsel fees had skewed the jury's verdict. The jury, however, never reached the damage issue; it found against plaintiff on the threshold issue of liability. Since this finding by the jury effectively eliminated the potential for prejudice that the attorney-juror conversation contained, I fail to see how there was error in my refusal to withdraw the jury.[3] Accordingly, plaintiff is not entitled to a new trial for that refusal.

## CONCLUSION

For the reasons set forth above, none of the assignments of error alleged by plaintiff establishes her right to a new trial of this action. Thus, in spite of the resourceful and ingenious arguments advanced by her counsel, her motion for a new trial must be, and is, denied. An appropriate order will be entered.

3. Of course, the conduct of the attorney who talked with the jurors in the corridor was most reprehensible; no member of the Bar should ever engage in it. After my careful questioning of that attorney, however, I concluded that his involvement was an act of youthful naivete. I further believe that, because of my direct admonition to him, he will never in the future commit such a frivolous act.