## Bugay v. Pearl

*Louis M. Tarasi, Jr.,* for plaintiff.
*Seymour A. Sikov,* for defendants.

LOUIK, *J.,* November 10, 1976 — In the landmark decision of Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966), the Pennsylvania Supreme Court adopted the doctrine of strict products liability as enunciated in section 402A of the Restatement 2d Torts. Section 402A by its literal language applies only to one who sells a product in a defective condition. In the present matter, this court has been asked to extend the doctrine of strict products liability to one who leases a product in a defective condition.

According to the complaint, plaintiff, Donald L. Bugay, leased a 40-foot extension ladder from defendants, James Bandi and Gary Martin, t/d/b/a J & G Tool Rental Company. The company was engaged in the business of leasing and supplying such ladders. On or about September 28, 1974,

plaintiff, while using the ladder, fell approximately 30 feet and seriously injured himself. He maintains that the accident was caused by the ladder which was leased in an unreasonably dangerous condition by defendants. Defendants have filed preliminary objections in the nature of a demurrer to count II of the complaint, arguing that the doctrine of strict liability does not apply to lessors of goods.

There is no decision directly on point in Pennsylvania. However, almost every other jurisdiction which has adopted the doctrine of section 402A has also, when faced with the question, applied the doctrine to commercial lessors of products or to lease transactions which were commercial in nature: Annot., 52 A.L.R. 3d 121, 124 (1973); 2 Hursh & Bailey, American Law of Products Liability 2d (1974).

The leading case is Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965), which involved a person who was injured while riding as a passenger in a truck leased from defendant. In applying the doctrine of strict liability against defendant leasing company, the court seemed most concerned with the fact that goods that are commercially leased are usually put to more extensive use than goods that are sold. As a result, when a leased good, such as a car, is defective, "the bailee, his employees, passengers and the traveling public are exposed to a greater quantum of potential danger of harm . . . than usually arises out of sales by the manufacturer . . . .": 212 A.2d at 777. Therefore, the court concluded, a commercial lessor should be held to the same strict standard as a manufacturer or retailer.

Other courts have noted that a commercial lessor, just like a seller, is in a better position than the

consumer to recognize a defective product and prevent its circulation into the market. Also, the lessor, like the manufacturer and retailer, will generally be able to insure against the risk of injuries stemming from the use of defective products which he has placed on the market and will thus be able to distribute any resulting losses: Bachner v. Pearson, 479 P.2d 319 (Alaska 1970); Stewart v. Budget Rent-A-Car Corp., 52 Hawaii 71, 470 P.2d 240 (1970).

A case on point with the present matter is McClaflin v. Bayshore Equipment Rental Co., 274 Cal. App. 2d 446, 79 Cal. Rptr. 337 (1969). It concerned a man who died from injuries received in an accident involving a stepladder he had leased from defendant. Some of the language of the court is particularly persuasive:

"Lessors of personal property, like the manufacturers or retailers thereof, 'are engaged in the business of distributing goods to the public. They are an integral part of the overall . . . marketing enterprise that should bear the cost of injuries resulting from defective products.' . . . In some cases, the lessor 'may be the only member of that enterprise reasonably available to the injured plaintiff', and the imposition of strict liability upon him serves, as in the case of the retailer, as an incentive to safety. This will afford maximum protection to the injured plaintiff while working no injustice upon the lessor: the latter can recover the cost of the protection by charging for it in his business. . . . In sum, the rationale of [strict liability] applies as logically and desirably to a lessor of chattels as to the manufacturers or retailers thereof." 274 Cal. App. 2d at 452, 79 Cal. Rptr. at 340 (citations omitted).

The only comment by the Pennsylvania Su-

preme Court on this issue is in a footnote to Chief Justice Jones' lead opinion in Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893 (1975). In discussing the language of section 402A the Chief Justice said:

"The term 'seller' is used generically to include all suppliers of products who, because they are engaged in the business of selling or supplying a product, may be said to have 'undertaken and assumed a special responsibility' toward the consuming public and who are in a position to spread the risk of defective products . . . The actual form of the transactions of such suppliers, whether by sale, lease or bailment, should not alter their obligations." fn. 3, at 93, 337 A.2d at 898.

Chief Justice Jones' opinion is very persuasive to this lower court. It is fortified by the weight of authority and persuasive reasoning from courts of other jurisdictions. Therefore, we hold that the doctrine of strict liability contained in section 402A of the Restatement 2d Torts applies to a lessor of goods who is engaged in the business of leasing goods of that kind. Defendants' preliminary objections to count II of the complaint will, therefore, be denied.

Defendants also filed preliminary objections to count III of the complaint, contending that the warranty provisions of Article 3 of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12 A P.S. §3-101 et seq., only apply to goods that are sold and not to goods that are leased. While plaintiff has not briefed this issue, it is clear that the policy reasons discussed above for extending strict liability to leased goods are just as relevant on the issue of extending the warranty provisions of the U.C.C. to leased goods. See Cintrone v. Hertz Truck Leasing & Rental Service,

supra, Cf. Hoffman v. Misericordia Hospital, 439 Pa. 501, 267 A.2d 867 (1970). Therefore, defendants' preliminary objections to count III of the complaint will also be denied.

### ORDER

And now, November 10, 1976, after argument in the above case, it is hereby ordered, adjudged and decreed that defendants' preliminary objections to count II of the complaint be and the same are hereby denied.

It is further ordered, adjudged and decreed that defendants' preliminary objections to count III of the complaint be and the same are hereby denied.