## Klepach v. Royer Pharmacy, Inc.

*Christopher S. Underhill,* for defendant.
*Larry B. Maier,* for plaintiff.

ECKMAN, *J.,* April 5, 1982 — On August 25, 1981, plaintiffs, Frances M. Klepach and Paul E. Klepach, filed a complaint in trespass and assumpsit against defendants, Royer Pharmacy, Inc., Peter Grieger and William Sherman, Jr. On October 16, 1981, defendant, Peter Grieger, filed preliminary objections in the nature of a demurrer to counts IV, V, XIII and XIV of the complaint. These preliminary objections are now ready for disposition.

"A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom for the purposes of testing the legal sufficiency of the challenged pleading." Duffee v. Judson, 251 Pa. Superior Ct. 406, 409, 380 A. 2d 843, 844-45 (1977). Moreover, " . . . to sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." Schott v. West-

inghouse Electric Corporation, 436 Pa. 279, 291, 259 A. 2d 443, 449 (1969).

For purposes of this motion the facts admitted are as follows: On July 2, 1980, Mrs. Klepach obtained a prescription for a medication known as "Clinoril" from her doctor to treat an arthritic condition. She took the prescription to Royer Pharmacy. The correct medication was dispensed by defendant Grieger, a registered Pennsylvania pharmacist employed by Royer Pharmacy. While filling the prescription, Grieger prepared a label bearing the inscription " . . . take (1) tablet twice a day . . . Clinitest 01 refills . . . 30 tab . . . 07-02-80." This label was affixed to the container containing the Clinoril. When Mrs. Klepach returned to have the prescription refilled, defendant Sherman, who is also a registered Pennsylvania pharmacist, followed the instructions on the label and delivered "Clinitest" tablets to Mrs. Klepach. Mrs. Klepach subsequently consumed the Clinitest, a caustic substance not for internal use, and suffered severe injuries to her stomach and esophagus.

In counts IV and XIII of the complaint, plaintiffs allege that defendant Grieger is liable in trespass on the theory of strict liability due to his negligence in mislabeling the prescription, thereby causing the delivery of an unreasonably dangerous substance to Mrs. Klepach. In counts V and XIV, plaintiffs allege that Grieger is liable in assumpsit under the implied warranties of merchantability and fitness for a particular purpose.

The sole issue raised by defendant Grieger in his preliminary objections is whether a pharmacist employed by a drug store is a "seller" or "merchant" of drugs so as to make him liable for injuries resulting from the mislabeling of a prescription in both strict liability and breach of the implied warranties

of merchantability and fitness for a particular purpose. According to our research, this is a case of first impression in Pennsylvania and other jurisdictions.

The Restatement, 2d, Torts, §402 A[1] defines strict liability in the following language:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractural relation with the seller."

Defendant asserts that because he is an employee of Royer Pharmacy, he does not qualify as a seller of a product. In defining a "seller" under section 402A, supra, the Pennsylvania Supreme Court in Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A. 2d 893 (1975), stated:

"The term 'seller' is used generically to include all suppliers of products who, because they are engaged in the business of selling or supplying a prod-

---

1. The Restatement, 2d, Torts, §402A, was adopted by the Supreme Court of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A. 2d 853 (1966).

uct, may be said to have 'undertaken and assumed a special responsibility' toward the consuming public *and* who are in a position to spread the risk of defective products." Id. at page 93, footnote 3 (Emphasis supplied.)

We do not believe that defendant Grieger is a seller engaged in the business of selling or supplying drugs within the above definition pertaining to strict liability. Our research uncovered no authority inapposite nor to support the theory that the drafters of the Restatement or the Pennsylvania Supreme Court ever intended that salaried employees, whether they are licensed pharmacists or other employees, bear the cost of injuries resulting from defective products, regardless of any fault on their part.

Comment f. of the Restatement, 2d, Torts, §402A, states, inter alia:

"The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. *It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant.* It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the *owner* of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home." (Emphasis supplied.)

The development of the doctrine of strict liability was the result of a social policy to protect the consumer against the mass producer or distributor of defective products: Berkebile v. Brantly Helicopter Corporation, supra; Lemley v. J. & B. Tire Co., 426 F. Supp. 1378 (W.D. Pa. 1977).The underlying purpose of the doctrine is to " . . . insure that the costs

of injuries resulting from defective products are borne by the manufacturers [suppliers] that put such products on the market rather than by the injured persons who are powerless to protect themselves." Miller v. Preitz, 422 Pa. 383, 410, 221 A. 2d 320 (1966), concurring and dissenting opinion of Justice Jones.

Comment c. of the Restatement, supra, states, inter alia:

" . . . the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; . . . [and] public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

Thus, the theory of strict liability is that the risk against injuries resulting from the sale of defective products can be insured by manufacturers, wholesalers, distributors and retailers and the cost of such liability insurance can be distributed among the public as a cost of doing business. This theory is inapplicable to an individual employee. In the present case, defendant Grieger, as an employee of Royer Pharmacy, receives no consideration directly from the sale of the drugs he dispenses and has no control over the sale price of such drugs. He is not in a position to spread the risk that is

inherent in his job or the cost of insuring against the risk.

Our decision does not detract in any way from the public policy of protecting the consumer which is the heart of the doctrine of strict liability. The interests of the consumer, who relies on the pharmacist to properly fill a prescription, are protected by the application of the strict liability principle to the employer retail druggist. He is in the best position to assume the risks and to spread the costs of insuring against the risks.

As to the counts in assumpsit, section 2314[2] of the Uniform Commercial Code, 13 Pa.C.S.A. §2314, defines the implied warranty of merchantability as follows:

"(a) Sale by merchant — Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale."

Clearly, this section requires that an individual be both a seller and a merchant in order for the implied warranty of merchantability to be applicable: Sessa v. Riegle, 427 F. Supp. 760 (E.D. Pa. 1977).

Section 2315[3] of the Code deals with the implied warranty of fitness for a particular purpose in the following language:

"Where the seller at the time of contracting has reason to know:

---

2. Uniform Commercial Code Act of November 1, 1979, P.L. 255, 13 Pa.C.S.A. §2314.

3. U.C.C., supra; 13 Pa.C.S.A. §2315.

(1) any particular purpose for which the goods are required; and

(2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;

There is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose."

Defendant contends that he is neither a seller nor a merchant by reason of his employee status and therefore not liable under the two implied warranties of the Code. We are cognizant that plaintiffs, by alleging liability on an implied warranty theory, are in effect seeking to hold defendant Grieger strictly liable. Our consideration of the contentions of all the parties are therefore guided by many of the same considerations by which we approached the strict liability issue.

The Uniform Commercial Code defines a "seller" as "a person who sells or contracts to sell goods."[4] The Code also states that "a 'sale' consists of the passing of title from the seller to the buyer for a price."[5] We find these definitions to be of little assistance to us in resolving this matter. Hence, we look to the common understanding of the term "seller" in order to determine if the implied warranties are applicable.

Black's Law Dictionary defines a sale as "a contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of property."[6] A sale is a transfer of goods for a consid-

---

4. U.C.C., supra; 13 Pa.C.S.A. §2103(a).

5. U.C.C., supra; 13 Pa.C.S.A. §2104.

6. Black's Law Dictionary 1503 (4th Ed. Rev. 1968).

eration, and the seller is the party that receives the consideration and effects the transfer of goods: American Container Corp. v. Hanley Trucking Corp., 111 N.J. Superior Ct. 322, 268 A. 2d 313 (1970).

In the present case the retail druggist, Royer Pharmacy, receives the consideration from any sales and not the employee pharmacist who fills prescriptions as part of the scope of his employment. We hold, therefore, that defendant Grieger is not a seller under the implied warranties of merchantability and fitness for a particular purpose of the Uniform Commercial Code.

Accordingly, we enter the following

## ORDER

And now, April 5, 1982, the preliminary objections in the nature of a demurrer filed by defendant, Peter Grieger, to counts IV, V, XIII and XIV of the complaint filed by plaintiffs, Frances M. Klepach and Paul E. Klepach, are hereby sustained. The claims against defendant Peter Grieger, in trespass on the theory of strict liability and in assumpsit for breach of the implied warranties of merchantability and fitness for a particular purpose are dismissed.