## Metzger v. Yale Materials Handling Corp.

*Richard S. Wasserbly,* for plaintiffs.

*John W. Craynock,* for defendant Independent Lift Truck Inc.

*R. Mark Armbrust,* for defendant Yale Materials Handling Corp.

BORTNER, *J.,* December 21, 1989 — Plaintiff brought suit against Yale Materials Handling Corporation, the manufacturer of Yale Forklift Trucks, for negligence, breach of warranty and strict liability. In addition, plaintiff has sued Independent Lift

Truck Inc. for negligence and breach of warranty. Both defendants have moved for summary judgment on all claims.

On or about June 23, 1986, George Metzger, plaintiff, was employed as a truck driver for a food distributor. As part of his job, he operated a forklift that his employer leased from Independent Lift Truck.

At the time plaintiff sustained his injuries, he was unloading a pallet with a load upon it. When the forks were placed under the pallet, the load shifted, requiring plaintiff to climb up on the forks to adjust the load. While standing on the forks, the right fork shifted laterally across the carriage and fell from the forklift. This lateral displacement also caused plaintiff to fall to the ground.

Prior to the accident, plaintiff had operated a forklift daily for four years at his current job. In addition, plaintiff knew the forklift he was operating on the day in question had a warning decal on the mast of the forklift which specifically cautioned against standing on the forks. Moreover, plaintiff testified that he "knew better" than to stand on the forks. Consequently, defendants argue that plaintiff is barred from recovery because he voluntarily assumed the risk of injury.

Plaintiff, on the other hand, argues that the risk of injury, if any, he assumed was that he might slip off the forks to the ground. Plaintiff contends that he did not assume the risk of the defective design of the forklift which permitted an allegedly secure fork to move laterally off the forklift. Plaintiff avers, therefore, that assumption of risk is not a defense in the instant case because he was not warned of the possibility of sudden lateral displacement.

Plaintiff's complaint predicated defendants' liability upon both negligence and strict liability pursu-

ant to section 402A of the Restatement (Second) of Torts.[1] The negligence theories of liability include, inter alia, defective design or manufacture and failure to warn that the forklift was defectively designed or manufactured. The product liability claims allege that Yale Forklift is strictly liable due to the defective design and construction of the truck and Yale Forklift's failure to warn or adequately warn users of the defects.[2]

Assumption of the risk is a viable defense to both negligence and product liability. *Whitley v. Philadelphia Transportation Co.,* 211 Pa. Super. 288, 234 A.2d 922 (1967) (negligence); *London v. Pep Boys, Manny, Moe & Jack,* 371 Pa. Super. 291, 538 A.2d 22 (1988) (product liability). In addition, assumption of the risk is governed by the same standard whether the cause of action is based on negligence or product liability averments. *Muller v. Midstates Equipment,* 11 D.&C. 3d 115 (1979).

The court in *Muller v. Midstates Equipment, supra,* defined assumption of risk in both negligence and product liability actions as a "knowing awareness and appreciation of a danger." *Id.* at 119. The *Muller* court reasoned that the plaintiff must have a subjective awareness of the risk for the assumption of risk doctrine to apply, "as differenti-

---

1. If assumption of the risk bars plaintiff's recovery, it will bar recovery for the claims against both defendants, Yale Materials Handling Corporation and Independent Lift Truck Inc. To be concise we shall refer only to Yale Forklift when discussing both defendants' liability.

2. Strict liability requires plaintiff to prove (1) the product was defective and (2) the defect was a proximate cause of the plaintiff's injuries. *Berkibile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). The lack of adequate warnings as to a product's risks may constitute a defect of that product.

ated from the 'reasonable man' objective standard applied in evaluating contributory negligence." *Id.* at 119.

The *Muller* court further distinguished the plaintiff's knowledge of the danger from the knowledge of the defect. The *Muller* court reasoned that "[a]ctual knowledge of *the danger,* but not of the defect or of the negligent conduct causing the danger is required." *Muller* at 122, n. 4 (1979). (emphasis in original) The "danger versus the defect" distinction in the *Muller* case is dispositive of the instant case.

*Muller v. Midstates Equipment, supra,* and the instant case are factually analogous. In *Muller,* the plaintiff pumped gasoline for a trucking company. An on-off lever on the side of each pump activated the motor of each pump. When the tank of the vehicle was full, a switch in the nozzle would automatically shut off the flow of fuel.

Prior to the plaintiff's accident, the on-off lever on one of the pumps ceased to function. The plaintiff's supervisor advised the plaintiff to continue to use the pump. The plaintiff in *Muller* interpreted this to mean that he would have to remove the safety cover on the pump with the broken lever and manipulate the internal mechanism of the pump's motor. Subsequently, the plaintiff was injured while moving the internal rod inside the pump.

The plaintiff in the *Muller* case had assumed the risk of danger because he had been instructed not to remove the safety cover. He was also aware of the warning appearing on the cover which cautioned against removal. Despite this knowledge, the plaintiff turned the pump on and off by removing the safety cover and manipulating the internal mechanism.

Although plaintiff in the instant case did not realize the specific defect of lateral displacement, he knew that there was danger involved in standing on the forks. He was warned not to stand on the forks. We find that plaintiff's knowledge of the danger is enough for assumption of the risk to bar his recovery.

In addition, public policy considerations dictate that it would be unreasonable to require that a manufacturer warn against every injury which might ensue from a mishap in the use of its product. The above concern was succinctly addressed by Judge Lipez's dissenting opinion in *Sherk v. Daisy-Heddon,* 285 Pa. Super. 320, 427 A.2d 657 (1981), rev'd. 498 Pa. 594, 450 A.2d 615 (1982). In *Sherk,* the plaintiffs sued the manufacturer of an air rifle to recover for the death of a 14-year-old boy who died as a result of a B.B. shot to the head accidentally inflicted by a friend. The plaintiffs alleged that the manufacturer was negligent for failing to put a warning on the rifle informing the user of the rifle's deadly potential.

The user of the rifle was warned as follows:

"The Pump-Up Air Gun is a new, much more powerful type gun than the traditional Daisy spring-air B.B. gun. It shoots with four to six times the power of the spring-air B.B. gun and must be treated with great care and respect.

*"Always handle a gun as if it were loaded.*

" 'Handling' means every time you touch your gun. It also means you must never point your gun toward any living thing nor at any part of your own body nor at anything that could be damaged by an accidental shot."

Judge Lipez found that the above warning was sufficient because "[a] warning by Daisy-Heddon specifically that a projectile from the gun could

penetrate a certain distance into a human body, and thereby, perhaps, cause death would therefore have been unnecessary." *Id.* at 338, 427 A.2d at 666. Judge Lipez concluded that because the user of the rifle "had knowledge of the *general dangers,* it cannot be said that he should have been specially warned of such a narrowly defined possibility." *Id.* at 338, 427 A.2d at 666. (emphasis supplied)[3]

Finally, in deciding whether to grant summary judgment, we must determine that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). We conclude that a manufacturer of a forklift truck should be entitled to judgment as a matter of law where plaintiff's injuries were attributable to plaintiff's standing on defective forks in open defiance of the manufacturer's clear and explicit warning to the contrary.

Accordingly we enter the following

## ORDER

And now, December 21, 1989, the matter having come before the court for disposition under Bucks County R.C.P. 266, it is hereby ordered and decreed that defendants' motion for summary judgment is granted.

---

3. In *Sherk v. Daisy-Heddon,* 285 Pa. Super. 320, 427 A.2d 657 (1981), the Superior Court held that the trial court erred in refusing to allow the case to go to the jury under a theory of negligence and thus remanded the case for further proceedings. Judge Lipez in his dissent argued that the trial court did not err in refusing to charge on negligence because there was no duty to warn of the specific danger. The Pennsylvania Supreme Court in *Sherk v. Daisy-Heddon,* 498 Pa. 594, 450 A.2d 615 (1982), reversed the order of the Superior Court and reinstated the judgment upon the jury's verdict in favor of the defendant-manufacturer.