557 A.2d 1

Sammie WALKER and Valerie Walker, Appellants,

v.

**GENERAL MOTORS CORPORATION, Kutner Buick, Inc., and Jules Kutner Enterprises, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1988.

Filed March 10, 1989.

Reargument Denied April 28, 1989.

402

---

George J. Badey, III, Philadelphia, for appellants.

Francis P. Burns, III, Philadelphia, for General Motors, appellee.

Before McEWEN, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This is an appeal from a judgement entered in favor of appellee after a jury found that appellant's injuries were not caused by a defect in the braking system of the General Motors vehicle he was driving.

In May of 1982, appellant purchased a 1980 Buick Skylark from Kutner Buick, Inc. In December of 1982, while driving through Philadelphia's Fairmount Park, he was unable to negotiate a curve, allegedly because of failure of the car's braking system to operate properly, and crashed head-on into a tree, sustaining serious and permanent injuries. Suit was instituted against appellees General Motors as manufacturer of the vehicle, and Kutner as seller, on a theory of strict liability. The jury found in favor of appellees, and after appellant's post verdict motions were denied, this appeal followed.

Appellant has raised several assignments of trial error which we will address seriatim, although not in the order presented.

■ It is first argued that the direct testimony of appellee's expert witness, Duane Harwick, greatly exceeded the scope of the answers he had given to appellant's interrogatories. Specifically it is contended that during direct examination a new theory, "brake drag", was advanced to explain the accident. Moreover, appellant claims that the trial court compounded the problem by refusing to grant a continuance to allow him to meet this hitherto unused explanation.

Appellee responds that both aspects of this issue have been waived by appellant's failure to raise them in a timely manner. We are constrained to agree.

Our court has consistently held that

To avoid waiver, a party must make a timely objection. *Rubinstein v. J.E. Kunkle Co.*, 244 Pa.Super. 474, 477 n. 2, 368 A.2d 819, 821 n. 2 (1976). Timeliness requires a *specific* objection at the proper stage in the questioning

of a witness. *Commonwealth v. Hughes*, 268 Pa.Super. 536, 539 n. 3, 408 A.2d 1132, 1134 n. 3 (1979).

*Bell v. City of Philadelphia*, 341 Pa.Super. 534, 542, 491 A.2d 1386, 1390 (1985). (Emphasis supplied).

We find the principle applicable herein. Although specific objections were made to other aspects of Mr. Harwick's testimony, the introduction of the brake drag theory met with no immediate or particular resistance. Instead, appellant's objection, not raised until the end of direct examination, was a general one, relating to the entire substance of the expert's testimony, and failing to mention brake drag at all. Moreover, no continuance to meet this theory was requested. Under these circumstances, appellant's claims cannot be said to have been preserved.

■ Appellant's next contention is that the police officer who investigated the accident should have been qualified as an expert, and his opinion regarding the cause of the accident admitted. As our supreme court has concluded, the opinion of an investigating officer as to the cause of a motor vehicle accident he did not witness is "grossly speculative and an invasion of the jury's exclusive prerogative." *Brodie v. Philadelphia Transportation Company*, 415 Pa. 296, 299, 203 A.2d 657, 658 (1964). The officer opined that when the brake locked on the left rear wheel of appellant's vehicle, the car was forced in that direction, propelling it into the tree. However, the very existence of a brake malfunction and a resulting swerve were matters to be proven to the jury. While a police officer may be properly qualified as an expert where the foundation for the presentation of such expertise is laid, *Lesher v. Henning*, 302 Pa.Super. 508, 449 A.2d 32 (1982), here no such qualification was offered in either accident reconstruction or vehicle dynamics.[1] Regardless of the officer's willingness to explain the cause of the accident, no credentials were supplied to support his opinion. *See Reed v. Hutchinson*, 331 Pa.Su-

1. The officer was not available for trial. The opinion in question was redacted from his deposed testimony which was then read, after various other deletions, into the record.

per. 404, 480 A.2d 1096 (1984). Because of these omissions, the same opinion was prevented from being introduced through the testimony of appellant's expert, whose reliance on the officer's report was sought to be established. Clearly where evidence is inadmissible directly from its source, it is no less inadmissible indirectly through another.

Appellant's next two issues are related to the claim that the trial court erred in failing to charge the jury in accordance with the Pennsylvania Standard Jury Instructions on strict liability.

In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial.

*Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985).

Appellant at no time claims that the instruction actually given on the law of strict liability was incorrect. In fact our review of the instruction as given would belie any such assertion. Rather, he insists that the court caused confusion by refusing to instruct the jury to disregard any questions of negligence after counsel had argued appellee's due care during closing. Appellant also contends that the difficulty was exacerbated by the first jury interrogatory, which addressed, in a misleading way, the issue of substantial change.

We first note that counsel's closing remarks referred only to the ability of appellee's expert, the designer of the braking system, not to appellee's negligence or otherwise in regard to its manufacturing the brakes; no due care question was raised to require neutralizing instructions. Therefore the court was appropriately unwilling to introduce a concept, hitherto absent from the case, which would have to be preceded by an explanation as to its irrelevance. Such an instruction would have been more productive of confu-

sion than clarity. The function of instructions is to provide the jury with "appropriate direction and alternatives to guide them in their determination," *Mackowick v. Westinghouse Electric Corp.*, 373 Pa.Super. 434, 440, 541 A.2d 749, 752 (1988). The charge given fulfills this objective. As appellant himself points out, quoting *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975),

"Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries."

*Id.*, 462 Pa. at 87, 337 A.2d at 898. The jury was made aware of these elements and would not have been further guided by information *a priori* unnecessary, and perhaps obstructive to their deliberations.

■ The interrogatory of which appellant complains reads as follows:

Do you find that defendant, General Motors Corp., and defendant, Kutner Buick, Inc., sold a product that was in an unsafe condition when it left General Motors Corp.'s possession?

Appellant argues that this question reintroduces the issue of substantial change, which had already been resolved by means of a stipulation, causing (more) unavoidable confusion and prejudice to his case. However, the trial court twice specifically instructed the jury, to whom the stipulation had already been read, that the parties agreed there was no substantial change in the brakes of the car from the time it had left appellee's factory until the accident occurred. Under these circumstances, we see no grounds for relief.

■ Error is also assigned to the trial court's action in first sustaining an objection and then offering a curative instruction after appellee took exception to a remark made by appellant's counsel during closing. It is argued that this sequence of events reflected badly on counsel's credibility, and usurped the jury's function of recollecting the evidence.

The exchange occurred after appellant's counsel recalled a promise made by appellee's counsel in his opening statement to the effect that the investigating officer would testify to the speed of appellant's vehicle upon impact. Because of appellant's successful objection to this evidence, it was not produced at trial. Nonetheless, appellant insists that the jury should have been left to decide whether appellee had met its burden of fulfilling this promise, even though appellant had assured appellee's inability to do so. As the trial court points out, the net result of the occurrence is that the jury was reminded that the issue of speed was not before them. We find the court's action to have been entirely proper.

■ Appellant's final argument is that the trial court erred in admitting a statement he made to the investigating police officer in the emergency room of the hospital shortly after the accident. The basis for the objection is 42 Pa.C.S.A. § 7101 which reads, in pertinent part, as follows:

Section 7101. Settlements and other agreements with hospitalized persons

(a) General rule.—

(1) No person whose interest is or may become adverse to a person injured who is confined to a hospital or sanitarium as a patient shall, within 15 days after the date of the occurrence causing the injury to such patient:

(i) Negotiate or attempt to negotiate a settlement with such patient.

(ii) Obtain or attempt to obtain a general release of liability from such patient.

(iii) Obtain or attempt to obtain any statement, either written or oral, from such patient for use in negotiating a settlement or obtaining a release.

(2) Any settlement agreement entered into, any general release of liability or any written or oral statement made by any person who is confined in a hospital or sanitarium after he incurs a personal injury ... shall not be admissible in evidence in any matter relating to

the injury and shall not be used for any purpose in any matter in connection therewith.

Appellant contends that § 7101(a)(1)(iii) is germane because the officer, upon hearing from appellant that he had probably "skidded on some wet leaves," issued a speeding citation, in appellant's view an indication of adverse interest under the provisions of the statute, and because the report containing this statement could have been used by an insurance carrier to force a settlement. We are unpersuaded. First, so far from being an adverse party as appellant describes him, the investigating officer is not a party at all. 3 *Standard Pennsylvania Practice 2d*, § 14:1 observes that:

> The Judicial Code defines a "party" as a person who commences or against whom relief is sought in a matter, and the term includes counsel for such a person who is represented by counsel. In its broader aspects, the term parties includes all who are directly interested in the subject matter of the suit or some part thereof, and who have a right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment rendered. More specifically, parties to an action are those who are named as such in the record and are properly served with process or enter an appearance or are brought into the action in some other fashion.

Under this definition, a police officer's issuance of a traffic citation does not constitute proof of an interest, adverse or otherwise, since no advantage, no gain or loss, accrues to the officer from his action, and appellant does not supply us with authority to the contrary. Moreover, the possibility that the officer's report might be used by an insurance company does not bring appellant's statement within the ambit of the statute which clearly specifies that the statement must be taken "for use" in reaching settlement or release.

§ 7101(a)(2) is similarly inapplicable to the statement. The purpose of the statute is to prevent the exploitation of an injured person's weakened condition by a potentially adverse party in future litigation. As both the title of the

section [2] and the language of the provision indicate, the statute has to do with settlements, releases, and other agreements in contemplation of legal action. Appellant's statement was not made in the context of such action, or to a person able to become involved as a party to such action.

While it might be argued that the phrase "or other statement written or oral" refers without limitation to appellant's utterance, it must be read in *pari materia* with the remaining portions of the act. Such a reading leads to the conclusion that the failure to include language similar to that of § 7101(a)(1)(iii), e.g., "for use in negotiating a settlement or obtaining a release," is merely legislative oversight, the intention being to prevent a detriment to an injured person through rapacious actions by, e.g., insurance adjusters. Therefore, the trial court's refusal to exclude appellant's statement does not constitute error.

Order affirmed.

**2.** 1 Pa.C.S.A. § 1924. Construction of titles, preambles, provisos, exceptions and headings

The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a statute shall be construed to exclude all others. The headings prefixed to titles, parte, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.