Arthur BASELICE, III, Appellant

v.

FRANCISCAN FRIARS ASSUMPTION BVM PROVINCE, INC., Reverend Thomas Luczak, OFM, Archdiocese of Philadelphia, Archbishop Ryan High School, Cardinal Justin Rigali, and Cardinal Anthony Bevilacqua, Appellees (Two Cases).

Superior Court of Pennsylvania.

Argued May 25, 2005.

Filed July 1, 2005.

Jay N. Abramowitch, Wyomissing, for Baselice, appellant.

C. Clark Hodgson, Jr., Philadelphia, for Archdiocese, appellee.

Dennis R. Suplee, Philadelphia, for Franciscan Friars and Luczak, appellees.

Before: DEL SOLE, P.J., BENDER and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Appellant, Arthur Baselice, III, challenges the orders of October 13, 2004, granting motions for judgment on the pleadings in favor of appellees, the Franciscan Friars Assumption BVM Province, Inc., Reverend Thomas Luczak, OFM, the Archdiocese of Philadelphia, Archbishop Ryan High School, Cardinal Justin Rigali, and Cardinal Anthony Bevilacqua. The motions for judgment on the pleadings were granted primarily on the basis of the statute of limitations. Appellant contends that the trial court erred in granting the motions, arguing that the discovery rule and fraudulent concealment exceptions to the statute of limitations are applicable and that jury determinations are necessary with regard to his issues. Additionally, appellant challenges the dismissal of his additional claims against appellees (based on conduct occurring after the original sexual abuse), for which appellant filed his complaint within the time period of the applicable statute of limitations. Appellant contends that the trial court erred in granting the motions with regard to these claims, arguing that factual questions remain with regard to whether appellees committed torts against appellant within two years of the filing of appellant's complaint. We affirm.

¶ 2 The relevant factual history is as follows. Appellant initiated the present action on June 22, 2004. Trial Court Opinion, 1/18/2005, at 1. The allegations of appellant's complaint, deemed true for purposes of this appeal, include claims of improper sexual contact between Father Newman, a priest, and appellant, a student at Archbishop Ryan High School from 1992 to 1996. *Id.* at 1–2. Appellant also claims that Father Newman introduced appellant to and supplied appellant with drugs and alcohol, resulting in appellant's current addictions to drugs and alco-

hol. *Id.* at 2. Appellant, now twenty-six years of age, was admitted to an in-patient drug and alcohol treatment facility in 2004, per a recommendation by the Archdiocese of Philadelphia. *Id.* While appellant was admitted at this facility, the Archdiocese attempted to contact appellant with regard to a settlement agreement. *Id.*

¶ 3 Appellant's complaint contains claims for statutory violation/negligence per se, intentional infliction of emotional distress, civil conspiracy, common law duty of reasonable care, breach of fiduciary duty, failure to provide a safe and secure environment, negligent supervision, persons acting in concert, negligent misrepresentation, failure to protect against foreseeable risk, duty to warn of an unreasonable risk of harm, negligent supervision or use of improper persons as agent, use of incompetent persons, fraudulent concealment, intentional failure to supervise, intentional failure to warn, and punitive damages. Appellant's Complaint, at 28–55. On August 26, 2004, appellees filed motions for judgment on the pleadings; and on October 13, 2004, the lower court granted the motions and dismissed the case. Docket Report, at 4, 6. This appeal follows.

¶ 4 Our scope of review on an appeal from the grant of judgment on the pleadings "is plenary ... we must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Citicorp North America, Inc. v. Thornton,* 707 A.2d 536, 538 (Pa.Super.1998). Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034, "which provides for such judgment after the pleadings are closed, but within such time as not to delay trial ... it may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* Additionally, the standard to be applied on review "accepts all well-pleaded allegations of the complaint as true." *Tucker v. Philadelphia Daily News,* 577 Pa. 598, 848 A.2d 113, 131 (2004).

*Statute of Limitations Issue*

¶ 5 Appellant's first contention is that the trial court erred by entering judgment on the pleadings based on the statute of limitations where the discovery rule and fraudulent concealment exceptions and analyses were applicable so as to warrant a jury determination.[1] Appellant's Brief, at 5. In support of his claims, appellant cites decisions of the court of common pleas[2] in which the lower courts denied preliminary objections or motions for judgment on the pleadings based on the statute of limitations. These courts found that

---

1. Appellant also refers to the minority tolling statute, which tolls the running of the statute of limitations for minors until the age of majority. 42 Pa.C.S.A. § 5533(b). This provision is not applicable to appellant's case. Here, 42 Pa.C.S.A. § 5533(b)(1) is not applicable because appellant brought suit beyond even the extended statute of limitations period after reaching the age of majority; and 42 Pa.C.S.A. § 5533(b)(2), which tolls the statute of limitations for victims of childhood sexual abuse for twelve years after the age of majority, is not applicable either, as the statute is not retroactive (the current cause of action

accrued prior to the enactment of that amendment to the statute).

2. *A.L.M. v. Diocese of Allentown,* No.2004-C-78, 2004 WL 3104798 (Com.Pl.Lehigh County, 2004); *Bonson v. Diocese of Altoona–Johnstown,* No. 3104 of 2003, 2004 WL 1681126 (Com.Pl.Westmoreland County, 2004); *Matthews v. Diocese of Pittsburgh,* No. GD04–002366, 2004 WL 2526794 (Com.Pl. Allegheny County, 2004); and *Morrison v. Diocese of Altoona–Johnstown,* No. 1236 of 2004, 2004 WL 3141330 (Com.Pl.Westmoreland County, 2004).

there were fact questions for the jury to determine whether the plaintiffs knew or should have known that they were injured or that the Archdiocese could have been responsible for their injuries. Appellant claims that similarly, the jury must resolve the issues here. Appellant's Brief, at 23–26.

¶ 6 Appellant emphasizes that his claims against appellees are independent causes of action from any claims against Father Newman. And, while stating that at the time of the sexual assault he knew that he had suffered an injury at the hands of Father Newman, appellant contends that he was unaware until recently that appellees were possible causes of his injuries. Appellant's Brief, 31–38; Appellant's Complaint 24–26.

¶ 7 Additionally, appellant argues that the special relationship between the parties, as well as the conduct of appellees, caused appellant to relax his vigilance in bringing suit and contributed to appellant's lack of knowledge with regard to the causes of his injuries. Appellant argues that his general relationship to the church amounts to the specific level of a fiduciary duty, no different from an attorney-client relationship. Appellant's Complaint 24–26; Appellant's Brief, 20–23.

¶ 8 Ultimately, appellant's discovery rule exception claim is that he did not know he was injured by appellees at the time of the abuse and that because of appellees' conduct, he could not have known that appellees injured him or caused his injury at the time of the abuse. Appellant's fraudulent concealment claim is that because of the nature of his relationship to appellees, and due to the systematic pattern of conduct exhibited by appellees, the statute of limitations should be tolled since appellant relaxed his vigilance in bringing suit and appellees' conduct prevented him from discovering his injury or its cause within the prescribed period of time. We are constrained to disagree.

¶ 9 Under Pennsylvania law, tort claims for intentional conduct, negligence, and conduct based in fraud are subject to a two-year statute of limitations. 42 Pa. C.S.A. § 5524 states, in pertinent part, "the following actions and proceedings must be commenced within two years: an action for assault, battery, false imprisonment ... an action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another ... [and] any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud." 42 Pa.C.S.A. § 5524(1), (2), (7).

¶ 10 The statute begins to run "as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). A person asserting a claim "is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id.*

¶ 11 The statute of limitations requires "aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made ... the statute of limitations supplies the place of evidence lost or impaired by lapse of time, by raising a presumption which renders proof unnecessary." *Dalrymple v. Brown*, 549

Pa. 217, 701 A.2d 164, 167 (1997). Statutes of limitations "are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." *Kingston Coal Company v. Felton Min. Co., Inc.,* 456 Pa.Super. 270, 690 A.2d 284, 288 (1997).

¶ 12 Here, almost ten years have passed since the latest instance of alleged abuse. It is clear that unless an exception is applicable, appellant's claims are barred by the statute of limitations.

¶ 13 Appellant argues that the discovery rule tolls the statute of limitations. The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that "where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Id.* The statute begins to run in such instances when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Haggart v. Cho,* 703 A.2d 522, 526 (Pa.Super.1997). The party seeking to invoke the discovery rule "bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence." *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 249 (1995).

¶ 14 In the past, we have applied the discovery rule in such matters as medical malpractice cases, where the plaintiff's injury, itself, is not obvious or apparent (*see Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959)) and in "creeping disease" cases, where the plaintiff had been exposed to hazardous substances but the injury did not develop until a later time (*see Trieschock v. Owens Corning Fiberglas Co.,* 354 Pa.Super. 263, 511 A.2d 863 (1986)). Most recently, in *Fine v. Checcio,* 870 A.2d 850 (Pa.2005), the Supreme Court of Pennsylvania held that the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises, regardless of whether the underlying injury was discoverable before the end of the prescribed limitations period.[3]

---

3. Appellant has creatively argued that the *Fine* decision "effectively overrules" our decision in *Meehan v. Archdiocese of Philadelphia,* 870 A.2d 912 (Pa.Super.2005), to be addressed below. In *Fine,* the Pennsylvania Supreme Court held that "it is not relevant to the discovery rule's application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine,* 870 A.2d at 857. In so holding, the Pennsylvania Supreme Court addressed and disapproved of situations in which some Justices, believing "that the discovery rule requires that it first be determined whether the injury and its cause were reasonably ascertainable at any point within the prescribed statutory period ... [found] the discovery rule [inapplicable] and the statute of limitations not tolled, even though a party did not know nor could have reasonably known of his injury and its cause at the time the injury occurred." *Id.* Unlike the underlying cases in *Fine,* the lower court, here, did not attempt to first determine whether the injury and its cause were reasonably ascertainable at any point within the prescribed statutory period. Instead, the lower court ruled that as a matter of law, appellant knew or reasonably should have known of his injury and its cause at the time his right to institute suit arose. In other words, the lower court did not attempt to determine

¶ 15 Here, appellant states that he knew he was injured by his abuser at the time of the abuse, that he knew Father Newman was his abuser, that he knew Father Newman was employed by the Catholic Church, and that he knew Father Newman was part of the hierarchy of the Catholic Church. Appellant claims, however, that he did not know that the Church was a possible cause of his injury until sometime after 2003. Appellant desires a jury to determine whether appellant exercised reasonable diligence in investigating his injury and its cause for purposes of bringing suit against appellees.

¶ 16 Appellees respond by noting that appellant knew he was abused and knew the identity of his abuser, but he failed to inquire, at all, into possible causes of action against Father Newman or Father Newman's employer. To additionally support their position, appellees cite our decision in a similar matter, *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912 (Pa.Super.2005), in which we affirmed the granting of a motion for judgment on the pleadings based on the statute of limitations, finding no fact questions for the jury regarding when the plaintiffs knew or should have known that they were injured or that the Archdiocese could have been responsible for their injuries. Appellees' Brief, at 5.

¶ 17 We agree with appellees that the discovery rule is not applicable here. As we noted in *Meehan*, the underlying child abuse "is the injury in this matter, not the alleged cover-up by the Archdiocese (otherwise, any member of the Catholic Church could conceivably bring suit against the Archdiocese, absent any abuse, alleging injury from the Archdiocese's general conduct) . . . unlike traditional discovery rule cases where the injury, itself, is not known or cannot be reasonably ascertained, appellant's injuries, here, were known when the abuse occurred." *Meehan*, 870 A.2d at 920. As in *Meehan*, appellant, here, is really claiming that he was unaware, not of his injury, but of a secondary cause of his injury (the primary cause being the individual who committed the abuse). Appellant nevertheless argues that a jury should determine if appellant should have investigated these secondary parties during the limitations period or if appellant was unable, despite reasonable diligence, to bring suit against these secondary parties until 2004.

¶ 18 Before applying the discovery rule exception, we must "address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action . . . the plaintiff's conduct is to be evaluated in terms of what [he] should have known at a particular time by following a course of reasonable diligence." *Haines v. Jones*, 830 A.2d 579, 585 (Pa.Super.2003). Generally, "the point at which the complaining party should reasonably be aware that he has suffered an injury is . . . an issue of fact to be determined by the jury." *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 622 A.2d 1388, 1391 (1993). Where "the facts are so clear that reasonable minds cannot differ," however, the commencement of the limitations period can be determined as a matter of law. *Id.* Additionally, "if a party has the means of discovery within [his] power but neglects to use them, [his] claim will still be barred." *Haines*, 830 A.2d at 585.

whether appellant knew or should have known about his injury and its cause at some point during the limitations period; the lower court ruled that the discovery rule was inapplicable because appellant knew or should have known of his injury and its cause at the time of the injury, itself.

¶ 19 Here, appellant knew he was injured, knew the identity of the primary cause of his injury, and knew his abuser was an employee of the Archdiocese of Philadelphia, yet appellant conducted no investigation into any cause of action against Father Newman or into any other aspect of the matter. These facts alone were sufficient to put appellant on notice that there was a possibility that the Archdiocese had been negligent. Neither appellant's lack of knowledge of the Archdiocese's conduct, nor appellant's reluctance, as a member of the Catholic Church, to investigate the possible negligence of the Archdiocese of Philadelphia after having been abused by one of its priests, tolls the statute of limitations when appellant had the means of discovery but neglected to use them. *See Meehan.* Therefore, we determine, as a matter of law, that the discovery rule is inapplicable and does not toll the statute of limitations in this matter.

¶ 20 Appellant also claims that the fraudulent concealment doctrine tolls the statute of limitations. The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Kingston Coal Company,* 690 A.2d at 290 (citing *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987)). The defendant's conduct "need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient ... mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Id.* Moreover, "in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Id.*

¶ 21 Here, appellant claims that due to his relationship with the Archdiocese of Philadelphia (which he argues equates to a fiduciary relationship) and because of the general and systematic conduct exhibited by the Archdiocese with regard to its offending priests, appellant relaxed his vigilance and deviated from his right of inquiry. Appellant claims that the relationship between appellant and the Archdiocese is identical to the relationship between an attorney and a client.[4] And, appellant contends that the general and systematic conduct of the Archdiocese of Philadelphia

4. Appellant cites *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981) (finding a confidential relationship between a vendor and a purchaser) and *Basile v. H & R Block, Inc.,* 777 A.2d 95 (Pa.Super.2001) (noting that where a confidential relationship as a matter of law does not exist, confidential relations may still arise based on the facts and circumstances of the case) to support the finding of a confidential or fiduciary relationship in the instant matter. Appellant's Reply Brief, at 7–9. Ultimately, however, appellant states that "neither [the Superior Court of Pennsylvania] nor [the Supreme Court of Pennsylvania] have ever addressed whether a confidential relationship can exist between a member of a church and its leaders." *Id.* at 7. The Court in *Meehan* noted the similar lack of precedent for such a relationship, however, and stated that "while the general relationship between the Archdiocese and its church members may be considered, in some circumstances, overbearing, no specific, legally recognized higher level association, such as the aforementioned relationships, existed between the plaintiffs and the Archdiocese." *Meehan,* 870 A.2d at 922. We similarly find no specific, legally recognized higher level association here, and we decline to create, recognize, or extend such a relationship in the instant matter.

constitutes an affirmative act under the doctrine of fraudulent concealment, which therefore requires a jury determination and the tolling of the statute of limitations.

¶ 22 Appellees respond by noting that appellant failed to identify any affirmative or independent act of concealment and, instead, only made accusations of systematic misconduct with regard to other priests, other parishioners, and the public in general. Appellees claim that even if this non-specific conduct is considered concealment, appellant cannot be considered to have relied on any representations or omissions of the Archdiocese because appellant did not make any effort to investigate his claims and the Archdiocese did not prevent him from investigating his claims.

¶ 23 We agree with appellees that the doctrine of fraudulent concealment does not toll the statute of limitations here. As in *Meehan,* appellant, here, has not put forth any evidence to indicate that he made any inquiries to the Archdiocese prior to 2003 regarding his potential causes of action. Appellant does not allege that appellees' silence misled him into believing that the alleged sexual abuse did not occur, that it had not been committed by Father Newman, or that it had not resulted in injury to appellant. Appellees never concealed from appellant the fact of the injury itself. Nor does appellant allege that he was lied to by appellees with regard to the identity of his abuser or his abuser's place within the Archdiocese, which if relied upon, would have caused him to suspend pursuit of his claims.

¶ 24 Again, the essence of appellant's fraudulent concealment argument is that the defendants' general conduct and/or silence concealed from him an additional theory of liability for the alleged sexual abuse. As we noted in *Meehan,* "this argument misses the mark ... for a cause of

action to accrue, the entire theory of the case need not be immediately apparent ... as soon as [appellant] became aware of the alleged abuse, [he] should also have been aware that [appellees], as the [priest's] employers, were potentially liable for that abuse." *Meehan,* 870 A.2d at 922 (citing *Kelly v. Marcantonio,* 187 F.3d 192, 201 (1st Cir.1999)).

¶ 25 Had appellant (sometime after the abuse but before the running of the statute of limitations) questioned the Archdiocese about his abuser (for example, questions about his abuser's current location or history within the church), and had the Archdiocese affirmatively and independently acted in response to appellant's inquiries so as to mislead appellant into forgoing his suit, the fraudulent concealment exception would later allow appellant's suit. The general and systematic conduct alleged by appellant here, however, does not constitute an affirmative act for purposes of the fraudulent concealment exception, and appellant has not shown that he relied on any affirmative act of concealment by the defendants which caused him to forgo pursuit of his cause of action. We agree that "to postpone the accrual of causes of action until [appellant] completed [his] investigation of all potential liability theories would destroy the effectiveness of the limitations period." *Id.* Therefore, the fraudulent concealment exception is inapplicable and does not toll the statute of limitations in this matter.

*Other Issues*

¶ 26 Appellant's second set of contentions is that the trial court erred by entering judgment on the pleadings and dismissing his other claims (based on conduct occurring after the original sexual abuse, for which appellant filed his complaint within the time period of the statute of limitations), arguing that factual questions remain with regard to whether appel-

lees committed torts against appellant within two years of the filing of appellant's complaint. Appellant's Brief, at 5.

¶ 27 Appellant first claims that, within two years of the filing of his complaint, appellees violated the Child Protective Services Law.[5] Appellant contends that he related the abuse perpetrated on him by Father Newman to representatives of the church, who failed to report the abuse to the proper authorities, as required by the Child Protective Services Law. Appellant's Brief, at 46. This claim fails.

¶ 28 The Child Protective Services Law provides that "persons who, in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made ... when they have reasonable cause to suspect, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child." 23 Pa.C.S.A. § 6311(a). Members of the clergy are specifically enumerated as persons required to report under the statute. *See* 23 Pa.C.S.A. § 6311(b).

¶ 29 Here, the contact for which appellant contends was subject to the Child Protective Services Act occurred in December of 2003. Because appellant turned eighteen in 1996, he was not a minor at the time appellees came into contact with him. As the lower court noted, appellees "did not come into contact with a 'child' as required by statute ... therefore, [appellees] were under no duty to report the abuse to authorities." Lower Court Opinion, at 4.

¶ 30 Next, appellant claims that appellees improperly attempted to negotiate a settlement agreement with him by mailing a settlement agreement and re-

lease to him while he was a patient in a drug rehabilitation facility. Appellant contends that such action by appellees violated 42 Pa.C.S.A. § 7101(a)(1)(i)-(iii), which prohibits an adverse party from negotiating a settlement with an injured person within fifteen days of the date of the occurrence causing the injury. Appellant's Brief, at 47. This claim fails.

¶ 31 42 Pa.C.S.A. § 7101(a)(1) provides that "no person whose interest is or may become adverse to a person injured who is confined to a hospital or sanitarium as a patient shall, within 15 days after the date of the occurrence causing the injury to such patient ... negotiate or attempt to negotiate a settlement with such patient ... obtain or attempt to obtain a general release of liability from such patient ... [or] obtain or attempt to obtain any statement, either written or oral, from such patient for use in negotiating a settlement or obtaining a release." The purpose of this provision is to "prevent the exploitation of an injured person's weakened condition by a potentially adverse party in future litigation." *Walker v. General Motors Corp.*, 383 Pa.Super. 400, 557 A.2d 1, 5 (1989).

¶ 32 While this statute serves to exclude from evidence any improperly obtained settlement agreements, here, appellant attempts to use its language as a private right of action. Nevertheless, the statute is inapplicable in the instant matter. Here, as the lower court noted, appellant entered the drug rehabilitation facility in 2004, while "the occurrences causing injury to [appellant], Father Newman's alleged sexual abuse, occurred in 1996, in excess of fifteen days before his admittance to the [facility]." Lower Court Opinion, at 5.

---

5. 23 Pa.C.S.A. § 6311.

¶ 33 Finally, appellant claims that appellees are liable for the tort of intentional infliction of emotional distress based on appellees' failure to comply with the Child Protective Services Law, appellees' attempts to provide counseling to appellant, and appellees' attempt to offer appellant a settlement agreement.[6] Appellant's Brief, at 48–52. These claims fail.

¶ 34 Liability for the tort of intentional infliction of emotional distress arises "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa.Super.1997). Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'." *Id.*

¶ 35 Here, we have already determined that appellees did not violate the Child Protective Services Law. Therefore, appellant's claim in this regard fails. As the lower court noted with regard to appellant's intentional infliction of emotional distress claim with regard to counseling, appellant "wanted to participate in counseling because of his desire to 'get clean and sober and address his injuries caused by Father Newman' ... [appellant] wanted counseling, and [appellees] provided the counseling to him." Lower Court Opinion, at 6. Therefore, appellees' offering and providing of counseling to appellant do not constitute outrageous behavior, and appellant's claim in this regard fails. Finally, the mailing of an offer for settlement by appellees to appellant does not constitute outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress. As the lower court noted, appellees "had a legal right to settle a possible dispute ... appellees were merely acting within their legal rights." *Id.*

¶ 36 Accordingly, having found that the lower court acted properly in granting appellees' motions for judgment on the pleadings and in dismissing the case, we affirm the orders below.

¶ 37 Orders AFFIRMED.

---

6. Appellant also claims appellees are liable for intentional infliction of emotional distress with regard to the negligent supervision of Father Newman. Because the negligent conduct alleged here occurred between 1992 and 1996, and because the statute of limitations for such a claim is two years, appellant's claim in this regard is barred by the statute of limitations.