**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-1327

———————

EDWARD WEHRENBERG,
                                   Appellant
v.

METROPOLITAN PROPERTY & CASUALTY INSURANCE CO
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-01477)
District Judge: Honorable Mark R. Hornak

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2017

Before:  AMBRO and KRAUSE, and RENDELL, *Circuit Judges*.

(Opinion filed: November 15, 2017)

OPINION[*]

KRAUSE, *Circuit Judge.*

Appellant Edward Wehrenberg appeals the District Court's grant of summary judgment in favor of Appellee Metropolitan Property and Casualty Insurance Company ("Metropolitan") on Pennsylvania state law claims for breach of contract and bad faith. For the following reasons, we will affirm.

## I.     Background

Wehrenberg owned a house that was insured by a homeowners insurance policy issued by Metropolitan (the "Policy").

The Policy provides, in pertinent part:

> We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in **Section I—LOSSES WE DO NOT COVER**
> . . .
> **Section I—LOSSES WE DO NOT COVER**
> . . .
> We do not insure under any coverage for any loss consisting of . . . B. defective, inadequate, faulty or unsound . . . 2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction[.]

JA 277, 280-281.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In October 2011, Wehrenberg leased the property to Alphonso Hyman for a period of five years starting in November 2011. The lease provided that Hyman could not "[m]ake changes to the property, such as painting or remodeling, without the written permission of [Wehrenberg]." JA 462. Despite this prohibition, Hyman proceeded to renovate the property, hiring a structural engineer in December 2011 and completing demolition of the house by January 2013.

In early 2012, Wehrenberg learned that Hyman had stopped making his monthly rent payments, which were to be paid directly to Wehrenberg's mortgage company. Unable to reach Hyman by call or email, Wehrenberg finally visited the property in June 2012, at which point he learned that the house had been "gutted[.]" JA 148. When Wehrenberg confronted Hyman about this on the phone after the visit, Hyman responded that the house had major structural problems, which he had decided to fix and which required him to gut the house, and that he would put the house back together.

Wehrenberg did not file a claim with Metropolitan at this time. Instead, he allowed Hyman to continue his work on the property, so long as Hyman promised to get the mortgage caught up and to get the house put back together as soon as possible. But in January 2013, Hyman again stopped paying rent. When Wehrenberg was again unable to reach him, Wehrenberg visited the property and found that the house remained in disrepair.

On February 28, 2013—more than eight months after he learned of the construction—Wehrenberg filed a claim for coverage under the Policy, asserting that the

3

property had been vandalized. After conducting an investigation, Metropolitan denied the claim for coverage on the basis that the Policy did not cover Wehrenberg's damage because it (1) was not "sudden and accidental" and (2) constituted an incomplete "renovation." JA 211-223.

Wehrenberg then filed a complaint in the Western District of Pennsylvania alleging two counts: one for breach of contract and one for bad faith denial of insurance coverage. The District Court granted Metropolitan's motion for summary judgment on both claims. As to the contract claim, the District Court concluded that the damage to Wehrenberg's property was not "sudden" or "accidental," and even if it were, the damage fell into many of the excluded categories of coverage under the Policy, including "repair," "construction," "renovation," and "remodeling." JA 13. As to the bad faith claim, the District Court concluded that there was no evidence of bad faith in the record. This appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, *Smathers v. Multi–Tool, Inc./Multi–Plastics, Inc. Emp. Health and Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002), which is appropriate only if, viewing the facts in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

4

## III. Discussion

### A. Breach of Contract Claim

Wehrenberg contends that disputes of material fact barred summary judgment as to the breach of contract claim.[1] We disagree. As the insured, Wehrenberg bore "the burden of proving facts that bring [his] claim within the policy's affirmative grant of coverage." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996). Only if he satisfied that burden did the burden shift to the insurer to "prov[e] the applicability of any exclusion or limitation on coverage." *Id.* Wehrenberg thus cannot prevail on appeal unless he can make the initial showing of coverage, i.e., that the damage to the property was "sudden and accidental" within the meaning of the Policy.

Wehrenberg has failed to make this showing. Pennsylvania courts deem the term "sudden and accidental" unambiguous, *see Techalloy Co., Inc. v. Reliance Ins. Co*, 487 A.2d 820, 826-27 (Pa. Super. 1984), and define it to mean, respectively, "abrupt[]" and "unexpected or unintended." *Lower Paxton Twp. v. U.S. Fidelity & Guar. Co.*, 557 A.2d

---

[1] We reject at the outset Wehrenberg's argument that Metropolitan is precluded from asserting affirmative defenses because it failed to plead them with specificity in its answer. "[A]ffirmative defenses may be raised by motion, at any time (even after trial), if plaintiffs suffer no prejudice." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006). Wehrenberg has suffered no prejudice from Metropolitan's failure to raise its affirmative defenses in the pleadings. He has been on notice of the defense since he received a denial of coverage letter from Metropolitan in July 2013, and the defenses have been before the District Court since the motion to dismiss stage.

393, 402 (Pa. Super. 1989); *see N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942

F.2d 189, 193 (3d Cir. 1991) (following the Pennsylvania Superior Court's interpretation

of "sudden and accidental," and holding that a "sudden and accidental" discharge of

pollution must be "abrupt and last a short time").  Damage that is ongoing typically

cannot be sudden.  *See Lower Paxton*, 557 A.2d at 403 (gas that entered a home

"gradually over time" was not "sudden"); *Techalloy*, 487 A.2d at 827 (pollution

discharge over a long period of time, even if "sporadic," was not "sudden").

Here, the evidence in the record reflects that the demolition of the property

happened over "a time span of about a month," a period of time that, as the District Court

observed, cannot itself be considered "abrupt."  But even if the initial physical damage

could be considered "abrupt,"[2] the record evidence shows that after Wehrenberg learned

of the damage in June 2012, he authorized Hyman to continue working on the property,

at least to the extent of sheetrock being hung, which Wehrenberg himself then

characterized as "remodeling."  JA 14.  Under these circumstances, we cannot say that

the damage to the property was either "sudden" or "accidental," much less "sudden and

accidental," as required under the Policy.[3]  Accordingly, Wehrenberg's breach of

---

[2] Wehrenberg argues that the Court should consider whether the damage to the property was "sudden and accidental" from his subjective perspective.  However, he cites no authority in support of his argument, and we are not aware of Pennsylvania case law that would support that proposition.

[3] Because the term "sudden and accidental" is conjunctive, the District Court's finding that the damage was not "sudden" is a sufficient basis on which to affirm.  *See Ogden Corp v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991) (construing the term

contract claim was properly dismissed.[4]

## B. Bad Faith Claim

Wehrenberg argues that Metropolitan acted in bad faith by refusing to cover the claim and by failing to adequately investigate it. We agree with the District Court that this claim has no merit. Generally, there can be no bad faith claim for denial of coverage if the insurer was correct as a matter of law in denying coverage. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Thus, as we agree with the District Court that Wehrenberg's breach of contract claim was meritless, so too was his bad faith claim.

Nor can Wehrenberg's bad faith claim stand independently based on

---

"sudden and accidental" and holding that "[b]ecause the complaint cannot be interpreted under New York law to contain an allegation of sudden contamination, it is unnecessary to analyze the allegations for the purpose of determining whether the conduct of Appellants falls within the meaning of 'accidental'"). However, the District Court properly concluded that the damage to the property was also not "accidental" because "the demolition and construction that Hyman performed was carefully planned" by Hyman, such that it could not be considered "unintended" by him. JA 11.

[4] We recognize that if Wehrenberg had satisfied his burden of establishing coverage under the Policy, the burden would have shifted to Metropolitan to "establish[] the applicability of an exclusion [under the Policy]." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (internal citations omitted). He would then have faced an uphill battle in arguing that "renovation" became "vandalism" within the meaning of the Policy simply because that renovation was prohibited under Wehrenberg's separate residential lease contract with Hyman; indeed, if anything, his argument supports a claim against Hyman for breach of that lease, not a change to the characterization of the property damage. Because we affirm the District Court's finding that Wehrenberg failed to satisfy his burden, however, we need not engage Wehrenberg's argument that the District Court erred in finding the "renovation" exclusion applicable.

Metropolitan's failure to investigate the claim before denying it. *Rancosky v. Wash. Nat'l Ins. Co.*, 130 A.3d 79, 94 (Pa. Super. 2015) ("Bad faith conduct includes lack of good faith investigation into the facts"). The record evidence clearly establishes that Metropolitan appropriately investigated Wehrenberg's claim before determining that it was not covered under the Policy, *inter alia*, by hiring a private investigator to investigate the claim and to interview Wehrenberg and Hyman, by sending a Metropolitan field adjuster, and by setting forth the reasons for denial in a formal coverage opinion.

## IV. Conclusion

For the above-stated reasons, we will affirm the judgment of the District Court.